Samuel JONES, Jr., Plaintiff-Appellant,

v.

PREUIT & MAULDIN, a partnership composed of E.F. Mauldin, individually, and E.F. Mauldin as Executor or Administrator of the Estate of Leonard Preuit, Deceased; E.F. Mauldin; E.F. Mauldin as Executor or Administrator of the Estate of Leonard Preuit, Deceased; and Preuit Mauldin, Defendants-Appellees.

No. 86–7415.

United States Court of Appeals, Eleventh Circuit.

Feb. 2, 1987.

---

Burr & Forman, C.V. Stelzenmuller, F.A. Flowers, III, Birmingham, Ala., for plaintiff-appellant.

Potts, Young, Blasingame & Putnam, T. Michael Putnam, Florence, Ala., Ronald C. Forehand, Asst. Atty. Gen. for State of Ala., Montgomery, Ala., for defendants-appellees.

Before HILL and JOHNSON, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case involves an appeal by the plaintiff from an order denying his motion for partial summary judgment and another order granting the defendants' motion for

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

summary judgment. We affirm the district court's denial of plaintiff's motion for partial summary judgment but reverse its order granting summary judgment in favor of the defendants.

## I

## BACKGROUND

Samuel Jones, the plaintiff, owned three International Harvester cotton pickers. In 1981, Jones employed Preuit & Mauldin ("P & M") to repair these pickers. P & M was a partnership composed of Edward Mauldin individually and in his capacity as the executor of the estate of Leonard Preuit. P & M agreed to let Jones pay his repair bill after the 1981 fall harvest. However, Jones also owed money to the Farmer's Home Administration ("FHA"), and the checks he received for the cotton he picked that fall were made out jointly to him and the FHA. Because the FHA refused to let Jones keep any of the proceeds, he was unable to pay the money he owed P & M.

P & M not having been paid, Leonard Preuit Mauldin, the son of Edward Mauldin and an employee of P & M, consulted with David Martin, an attorney. Upon Martin's advice, P & M filed three separate suits in state court—one for each picker—and obtained a writ of attachment for each picker. These writs were issued, and the pickers were seized, without any notice to Jones. The pickers were sold to P & M at a judicial sale in satisfaction of the judgments P & M eventually obtained against Jones in the state court actions.

Jones then filed this action under 42 U.S.C.A. § 1983 against P & M, Edward Mauldin, both individually and in his capacity as the executor of Leonard Preuit's estate, and Leonard Mauldin, alleging that the prejudgment seizure of his cotton pickers without notice violated his rights under the due process clause of the Fourteenth Amendment. Jones sought $200,000 in compensatory damages and a like amount in punitive damages plus costs. The district court, 586 F.Supp. 1563, originally dismissed the suit on the grounds that the claim was barred by a one year statute of limitations. Another panel of this Court reversed that ruling, holding that a six year statute of limitations applied, and remanded the case for further proceedings. 763 F.2d 1250 (11th Cir.1985).

On remand, and after the close of discovery, Jones filed a motion for partial summary judgment seeking a declaratory judgment that certain provisions of the Alabama attachment statute were unconstitutional. The defendants filed a motion for summary judgment as well, requesting the court to dismiss the case on a number of grounds. The court denied Jones's motion and granted the defendants' motion. 634 F.Supp. 1520. This appeal followed.

## II

## DISCUSSION

### A. CONSTITUTIONALITY OF ALABAMA ATTACHMENT STATUTE

 Jones argues that the district court erred in refusing to grant him partial summary judgment on the issue whether Ala.Code §§ 35–11–5, –110, and –111 were unconstitutional.[1] The denial of a motion for summary judgment will be reversed

---

1. The defendants contend that Jones failed to appeal the order denying his motion for partial summary judgment. That contention is meritless. The denial of a motion for partial summary judgment is an interlocutory order. Because the court did not make that order appealable under either 28 U.S.C.A. § 1292(a) or Fed.R.Civ.P. 54(b), Jones could not have appealed that order when it was entered. However, when reviewing an appeal from a final judgment, this court can review rulings on previous interlocutory orders. *Aaro, Inc. v. Daewoo International (America) Corp.,* 755 F.2d 1398, 1400 (11th Cir. 1985). Jones filed a proper notice of appeal from the court's order granting summary judgment in favor of the defendants; therefore, Jones can raise the denial of his motion for partial summary judgment in this appeal.

On the other hand, the defendants' argument that, if the attachment statute is unconstitutional, Jones is entitled only to nominal damages cannot be addressed in this appeal. That issue was not presented in either the defendants' or Jones's motion for summary judgment, thus the defendants cannot raise it now.

only for an abuse of discretion. *Johnson v. Bryant,* 671 F.2d 1276, 1279 (11th Cir. 1982). In the state court actions, P & M sought the enforcement of mechanic's liens against the cotton pickers, thus the writs of attachment were issued under Section 35–11–111. However, the defendants seemingly maintained before the district court that they had voluntarily followed procedures not mandated by the statute. These additional procedures allegedly satisfied the demands of due process. Jones did not supply any material with his motion rebutting the defendants' allegation. Furthermore, the Supreme Court did not hold until nearly a year later in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), that the constitutionality of an attachment statute depends upon the statutorily-mandated procedures and not upon the procedures actually used. Given both the undeveloped facts and the state of the law at the time, we cannot say that the district court abused its discretion in denying Jones's motion for partial summary judgment.

## B. APPLICATION OF *PARRATT V. TAYLOR*

■ In awarding summary judgment in favor of the defendants, the district court found that Section 1983 relief was unavailable under the rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt,* the Supreme Court held that a negligent deprivation of property that did not occur pursuant to an established state procedure does not violate the due process clause of the Fourteenth Amendment if the state provides an adequate post-deprivation remedy. Ever since *Hudson v. Palmer,* 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984), this rule applies to intentional deprivations of property as well. However, *Hudson* did not eliminate the requirement that the deprivation not occur pursuant to an established state procedure. Therefore, if an intentional deprivation of property occurs pursuant to an established state policy, *Parratt* does not apply. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–

36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982).

In seizing the cotton pickers without a hearing, P & M did act pursuant to an established state procedure. Ala.R.Civ.P. 64(a) provides for pre-judgment seizures in actions for money damages "for the purpose of securing satisfaction of the judgment ultimately to be entered in the action. . . ." Rule 64(a) does not specify any procedures but states merely that such seizures shall occur "under the circumstances and in the manner provided by law. . . ." Thus, whether P & M effected the seizures pursuant to an established state procedure depends upon the requirements of the particular attachment provisions on which P & M relied.

As previously indicated, P & M relied upon Alabama's mechanic's lien provisions. Ala.Code § 35–11–110 (1975) creates a lien in favor of a repairman against any vehicle he repaired. Ala.Code § 35–11–111 (1975) provides for the enforcement of such a lien by attachment upon the execution of a bond "as in other cases of attachment" and the making of an affidavit stating only that a mechanic's lien exists, that the amount owed for the repairs is due and unpaid, and that the attachment is not sued out for purposes of harassment. No pre-taking notice is required, and the affidavit need not state that a risk of destruction or concealment of the vehicle exists. Nor do the provisions of the general attachment statute incorporated by reference into Section 35–11–111 make any mention of a pre-taking hearing. Ala.Code §§ 6–6–43 and –45 (1975).

The defendants point to Ala.R.Civ.P. 64(b) which requires a hearing before the issuance of a writ of attachment unless the court determines that there exists a risk of concealment, transfer or harm to the property. Because P & M's affidavit did not aver such a risk, they argue that the seizure of the cotton pickers without any pre-taking hearing contravened Rule 64(b) and therefore did not occur pursuant to an established state policy.

However, Rule 64(b) applies only to actions in detinue and to actions "whereby the owner of a security interest in personal property seeks to recover possession of said personal property prior to judgment. . . ." P & M's actions did not fall into either category. Detinue is an action for the recovery of personal property wrongfully detained. *Ivey v. Verbeck,* 461 So.2d 813, 815–16 (Ala.Civ.App.1984); Ala. Code § 6–6–256 (1975). P & M sought payment on repair bills; therefore, its actions were in debt, not detinue. *Foshee v. General Telephone Company of the Southeast,* 295 Ala. 70, 322 So.2d 715, 717 (1975). Nor did P & M's actions satisfy the second category, for P & M lacked an enforceable security interest in the cotton pickers. A security interest is not enforceable and does not attach unless either the secured party is in possession of the collateral or the debtor has signed a security agreement that contains a description of the collateral. Ala.Code § 7–9–203 (1975). P & M had neither possession of the cotton pickers nor a security agreement signed by Jones. Therefore, P & M could not have proceeded under Rule 64(b). Furthermore, P & M's affidavits and the state court's findings recite the language required by Sections 35–11–110 and 6–6–43 and not that required by Rule 64(b), confirming that P & M was acting pursuant to Rule 64(a). *Cf. Ex parte Martin,* 412 So.2d 815, 817 (Ala. Civ.App.1982) (enforcement of statutory landlord's lien falls within Rule 64(a) and not (b)). Therefore, the seizure of the cotton pickers without notice occurred pursuant to an established state policy, and *Parratt* does not apply.

## C. QUALIFIED IMMUNITY

■ In granting the defendants summary judgment, the district court also relied on the fact that P & M had acted in good faith reliance on a statute that was not clearly unconstitutional. The propriety of that finding depends upon whether private defendants in a Section 1983 suit seeking damages on account of an unconstitutional attachment are entitled to qualified immunity. The Supreme Court has expressly reserved this question. *Lugar,* 457 U.S. at 942 n. 23, 102 S.Ct. at 2756 n. 23. However, two circuits have held that private defendants are entitled to such immunity if they neither knew nor reasonably should have known that the attachments violated clearly established constitutional rights. *Buller v. Buechler,* 706 F.2d 844, 850–53 (8th Cir.1983); *Folsom Investment Co. v. Moore,* 681 F.2d 1032, 1037–38 (5th Cir.Unit A 1982). *But see Howerton v. Gabica,* 708 F.2d 380, 385 n. 10 (9th Cir.1983) (private defendants not entitled to good faith immunity under Section 1983). We agree with the analyses of the Fifth and Eighth Circuits and hold that such immunity for private parties exists. However, because the defendants here failed to demonstrate clearly their good faith, the district court erred in awarding them summary judgment.

■ Section 1983 provides that every person who, acting under color of state law, deprives another person of a constitutional right is liable to that person for damages.[2] On its face, Section 1983 admits of no immunities. *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Nonetheless, the Supreme Court has reasoned that in enacting Section 1983, Congress did not intend to supplant traditional immunities embedded in the common law. Therefore, if an immunity was firmly established in the common law when Congress enacted Section 1983 and if strong policy reasons support its continued use, the immunity is available under Section 1983. *Owen v. City of Independence,* 445 U.S. 622, 637–38, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673 (1980); *Pier-*

---

**2.** The statute provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C.A. § 1983.

*son v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). However, the courts cannot engraft new immunities onto the statute. *Tower v. Glover,* 467 U.S. 914, 922–23, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984). Nor can the courts recognize traditional immunities that eviscerate the policies of Section 1983. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–59, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616 (1981). The good faith immunity that the defendants claim here satisfies both criteria and is therefore cognizable in this suit.

At the time of Section 1983's enactment, the common law tort of malicious prosecution made actionable the wrongful institution of attachment proceedings. Some jurisdictions even had an independent tort of wrongful attachment. However, a person was not liable under either tort unless he commenced the attachment with malice and without probable cause. *Buller,* 706 F.2d at 851; *Folsom Investment Co.,* 681 F.2d at 1038. *See also* W. Prosser, *Handbook of the Law of Torts,* § 120 (4th ed. 1971). Although such defenses technically are not immunities, Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Thus in *Pierson,* 386 U.S. at 555–57, 87 S.Ct. at 1218–19, the Supreme Court held that a police officer was entitled to immunity under Section 1983 if he arrested someone under a statute that he in good faith believed to be valid even though it was later held unconstitutional. Because a police officer was not liable under the common law for false arrest or false imprisonment if he acted in good faith and with probable cause, he was entitled to a good faith immunity under Section 1983. *See also Wood v. Strickland,* 420 U.S. 308, 318–19, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (that public school officials liable under state tort law for malicious acts only establishes good faith immunity under Section 1983). Likewise, the availability of similar defenses in actions for malicious prosecution and wrongful attachment establishes the historical precedent for recognizing good faith immunity here.

In addition, strong policy reasons justify the recognition of good faith immunity for private parties in these circumstances. The most compelling justification is that a person should not be penalized for resorting to the courts in order to enforce rights he in good faith believed he possessed. *Buller,* 706 F.2d at 851; *Folsom Investment Co.,* 681 F.2d at 1038. Such immunity would not impair deterrence of unlawful conduct because persons who seek an attachment that they know or reasonably should know violates clearly established constitutional and statutory rights would remain liable. *Buller,* 706 F.2d at 851.

In *Downs v. Sawtelle,* 574 F.2d 1, 15–16 (1st Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978), a case involving an involuntary sterilization, the court refused to accord good faith immunity to private parties acting in concert with state officials. The court observed that public officers receive such immunity because otherwise few people would be willing to serve in government. Because private citizens are not in an analogous position, the court reasoned that they are not entitled to a similar immunity. Because the Supreme Court has adopted a "functional" rather than a "derivative" approach to immunities, *see Harlow v. Fitzgerald,* 457 U.S. 800, 808–11, 102 S.Ct. 2727, 2732–34, 73 L.Ed.2d 396 (1982); *Dennis v. Sparks,* 449 U.S. 24, 28–32, 101 S.Ct. 183, 186–88, 66 L.Ed.2d 185 (1980), the court in *Downs* was correct in holding that a private defendant is not entitled to immunity simply because the state officials with whom he acts in concert receive immunity. However, a private defendant should not be denied immunity simply because he is not in the same position as those state officials. Instead, the court should determine under the particulars of each case whether the common law traditionally extended immunity to private parties and whether the recognition of that immunity is consistent with the goals of Section 1983.

In this case the defendants are not seeking any derivative immunity but claim the good faith immunity allowed them in their own right under common law. Thus, *Downs* does not command a different result.

■ Although the defendants are entitled to assert a claim of good faith immunity, the record fails to show that they are entitled to summary judgment. In determining whether a party moving for summary judgment has shown the absence of a genuine dispute as to any material fact, this Court must independently assess the record in the light most favorable to the nonmoving party. *Morrison v. Washington County, Alabama,* 700 F.2d 678, 682 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Having reviewed the record under that standard, we cannot say that no genuine dispute exists as to whether the defendants knew or should have known that the attachment statute relied on here violated a clearly established constitutional right.

Admittedly, the defendants are entitled to immunity if their conduct did not contravene a clearly established constitutional right; however, the defendants bear the burden of proving that any right they violated was not clearly established. *Harlow,* 457 U.S. at 808, 102 S.Ct. at 2732. In support of their claim of immunity, the defendants point to the fact that, at the time of the seizure, no published opinion had held the attachment statute they relied on unconstitutional, and that *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct.

1895, 40 L.Ed.2d 406 (1974), in which the Supreme Court upheld a garnishment statute, had muddled the standards for a constitutional attachment. Nonetheless, numerous cases prior to the attachments here indicated the constitutional invalidity of an attachment without notice absent a risk of immediate harm. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 605–08, 95 S.Ct. 719, 721–23, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 80–93, 92 S.Ct. 1983, 1994–2000, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corporation of Bay View,* 395 U.S. 337, 338–42, 89 S.Ct. 1820, 1821–23, 23 L.Ed.2d 349 (1969). In fact, in *Mitchell,* 416 U.S. at 608–09, 94 S.Ct. at 1900, although the attachment had occurred without any notice or hearing, the creditor had shown a risk of concealment. Also, in an unpublished opinion issued six months prior to the attachments by P & M, the Alabama attachment statute at issue here had been declared unconstitutional, the court stating that the statute's unconstitutionality was obvious. *Wiggins v. Roberts,* No. 75–M–1760, slip op. (N.D.Ala.1978). Even assuming *arguendo* that private defendants cannot reasonably be held accountable for unpublished opinions, *Wiggins* nonetheless indicates that the defendants should have known on the basis of *Di-Chem, Fuentes,* and *Sniadach* that an attachment without notice was unconstitutional. Furthermore, the defendants obtained the assistance of a lawyer who should have explained to them the import of these holdings.[3]

---

3. P & M and Edward Mauldin contend that summary judgment should be granted in their favor because only Leonard Mauldin and Sherman Crisler, P & M's general manager, were involved in obtaining the writs of attachment. In fact Edward Mauldin stated that he was totally unaware that Leonard Mauldin and Crisler had obtained the writs until the seizures had been completed. Whether corporations are vicariously liable under Section 1983 for the acts of their employees is an unsettled question. *Compare Iskander v. Village of Forest Park,* 690 F.2d 126, 128–29 (7th Cir.1982) (private employers not vicariously liable), *with Croy v. Skinner,* 410 F.Supp. 117, 123 (N.D.Ga.1976) (private employers vicariously liable). However, even though municipalities generally are not vicariously liable under Section 1983 for the acts of

their employees, *see Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978), they can be liable for even the single act of a policy-making individual. *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 1297–99, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2432–36, 85 L.Ed.2d 791 (1985). Therefore, corporations too may be liable for the actions of policy-making employees. The record supports the view that Leonard Mauldin and Sherman Crisler were key management personnel of P & M and that their actions in seizing the cotton pickers constituted the policy of P & M. Therefore, liability can be attributed to P & M and to Edward Mauldin as a general partner of P & M.

The defendants also argue that at the time of the seizures here the Supreme Court had never held that private defendants were liable for damages under Section 1983 on account of an unconstitutional attachment. However, *Di-Chem, Mitchell, Fuentes,* and *Sniadach* all implicitly held that a creditor's reliance on an attachment statute was state action; otherwise, the Court never would have reached the due process question. In fact, in *Fuentes* the judgment ran against both the creditor and the state officials. Although *Fuentes* involved only declaratory and injunctive relief, nothing in *Fuentes* suggested that the outcome would have been different if the debtor had asked for damages. *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970) (private party's joint participation with state official in a conspiracy constituted state action allowing damages under Section 1983). Although the defendants' argument raises a close question, any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 996–97 (5th Cir.1979). Consequently we cannot say that the defendants have satisfied their burden and shown that their conduct did not violate a clearly established constitutional right.

## D. WAIVER

■ The district court also found that Jones had waived his right to claim a violation of due process because he had failed to utilize available pre-taking and post-taking remedies. A week before the seizure, two deputies inspected the pickers at Jones's farm. Furthermore, a week passed between the time the sheriff seized the first picker and the time he seized the remaining two. During this interlude Jones consulted with a lawyer; however, Jones did not challenge the writs of attachment until nearly eighteen months after the seizures. Thus, the court concluded, Jones had an opportunity to interpose a pre-seizure objection, and his failure to do so, combined with his failure to make a prompt post-taking objection, constituted a knowing and voluntary waiver of his due process rights.

■ A party's failure to request an available pre-taking hearing constitutes a waiver and precludes relief under section 1983 for the deprivation of property. *Grandison v. Smith,* 779 F.2d 637, 641–42 (11th Cir.1986). However, no waiver occurred here because there were no pre-taking procedures available to Jones. Neither Section 35–11–111 nor Rule 64(a) establishes any pre-taking procedures for challenging the issuance of writs of attachment. Therefore, Jones had no pre-deprivation rights he could have waived.

Nor can the fact that Jones waited eighteen months before making any formal post-taking challenge constitute a waiver of his pre-taking rights to due process. Furthermore, in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court held that, if a deprivation without prior notice or hearing occurred as the result of an established state policy, the availability of post-deprivation state remedies did not bar the availability of a Section 1983 action. As previously indicated, the seizure of Jones's cotton pickers without notice or hearing occurred pursuant to an established state policy. Therefore, the district court's holding that Jones's failure to invoke promptly the state's post-taking remedies constitutes a waiver contravenes the holding in *Logan.* Consequently, we find that Jones did not waive his rights to due process.

## E. RES JUDICATA

■ The district court found also that this suit was barred because Jones could have raised his Section 1983 claim in his motion under Ala.R.Civ.P. 65.1 in state court seeking the forfeiture of one of the bonds posted by P & M. *See Allen v. McCurry,* 449 U.S. 90, 94–105, 101 S.Ct. 411, 414–20, 66 L.Ed.2d 308 (1980) (suit for

Furthermore, both P & M and Edward Mauldin ratified the attachment by accepting its benefits.

Thus, they can be held liable under Section 1983.

damages under Section 1983 collaterally estopped by motion to suppress in state criminal proceeding). An action under Section 1983 in federal court is precluded if the issues involved in the action could have been raised in a prior state court proceeding. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–85, 104 S.Ct. 892, 895–98, 79 L.Ed.2d 56 (1984). However, in determining the preclusive effect of a state court proceeding, this Court must accord that proceeding the same preclusive effect it would have under state law. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379–82, 105 S.Ct. 1327, 1331–33, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). Alabama law requires the presence of four elements for there to be claim preclusion: 1) a prior judgment rendered by a court of competent jurisdiction; 2) substantially identical parties in both suits; 3) a prior judgment rendered on the merits; and 4) the same cause of action in both suits. *Missildine v. Avondale Mills, Inc.,* 415 So.2d 1040, 1042 (Ala.1981). If all four of these elements are present, the prior judgment precludes subsequent litigation on the same cause of action, including any issues that were not but could have been litigated in the prior proceeding. *Russell v. Russell,* 404 So.2d 662, 664 (Ala.1981).

Claim preclusion does not exist here because Rule 65.1 and Section 1983 do not present the same cause of action. Under Alabama law, a cause of action in one case is the same as that in another case if the evidence needed to sustain the second action would also have sustained the first action. *Buck Creek Industries, Inc. v. Alcon Construction, Inc.,* 631 F.2d 75, 78 (5th Cir.1980); *Gulf American Fire & Casualty Co. v. Johnson,* 209 So.2d 212, 218 (Ala.1968). When a creditor obtains a writ of attachment, he must post a bond for damages in case of a wrongful attachment. Ala.Code § 6–6–45 (1975). Rule 65.1 allows the debtor to enforce the surety's liability on that bond if the attachment was wrongful. However, the inquiry under Rule 65.1 concerns only whether any of the statutory grounds for swearing out a writ of attachment exists. If the attachment satisfies the statutory requirements, relief under Rule 65.1 is unavailable. *Painter v. Munn,* 117 Ala. 322, 23 So. 83, 86–87 (1897). In contrast, relief under Section 1983 is available here only if the attachment occurred pursuant to an established state procedure. *See Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. Therefore, to obtain relief under Rule 65.1 the debtor must show that the attachment violated the provisions of the attachment statute while to obtain relief under Section 1983 he must demonstrate that it did not violate the provisions of the attachment statute. Such diametrically opposed requirements prevent their treatment as the same cause of action.

Nor is this action precluded because Jones failed to raise his claim for damages under Section 1983 as a counterclaim in the state court proceedings. The failure to raise a claim as a counterclaim precludes a subsequent suit on that claim only if the claim is considered to be a compulsory counterclaim. *Eatman v. Goodson,* 36 Ala.App. 360, 58 So.2d 129, 132–33 (1951), *cert. denied,* 257 Ala. 239, 58 So.2d 133 (1952); *Weaver v. Brown,* 87 Ala. 533, 6 So. 354 (1888). Ala.Code § 6–6–148 (1975) creates an independent cause of action for wrongful attachments and allows the recovery of compensatory and punitive damages. Thus, to obtain damages on account of a wrongful attachment, a debtor can either bring an independent suit under that section or file a Rule 65.1 motion in the original proceeding. *State v. Chandler,* 460 So.2d 1302, 1304 (Ala.Civ.App. 1984). Therefore, a claim for damages for a wrongful attachment is not a compulsory counterclaim in the proceeding in which the attachment was effected. Consequently, Jones's claim for damages under Section 1983 is not barred.

Accordingly, the district court's order denying Jones's motion for partial summary judgment is AFFIRMED. The order

granting summary judgment in favor of the defendants is REVERSED.