822 F.2d 998
 Samuel JONES Jr., Plaintiff-Appellant,
v.
PREUIT & MAULDIN, a partnership, composed of E.F. Mauldin,
individually, and E.F. Mauldin, as Executor or Administrator
of the Estate of Leonard Preuit, Deceased; E.F. Mauldin;
E.F. Mauldin as Executor or Administrator of the Estate of
Leonard Preuit, deceased; and Preuit Mauldin, Defendants-Appellees.
 No. 86-7415.
 United States Court of Appeals,
Eleventh Circuit.
 July 24, 1987.
 
 Burr & Forman, C.V. Stelzenmuller, F.A. Flowers, III, Birmingham, Ala., for plaintiff-appellant.
 Potts, Young, Blasingame & Putnam, Robert W. Beasley, Florence, Ala., Don Siegelman, Atty. Gen., State of Ala., Ronald C. Forehand, Asst. Atty. Gen., Montgomery, Ala., Bradley, Arant, Rose & White, David G. Hymer, Donald M. James, Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC
 Before HILL and JOHNSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 The defendants, Preuit and Mauldin ("P & M"); E.F. Mauldin, both individually and in his capacity as administrator of the estate of Leonard Preuit; and Preuit Mauldin, petition for a rehearing en banc of this panel's opinion in Jones v. Preuit & Mauldin, 808 F.2d 1435 (11th Cir.1987).[1] Although they do not seek a reconsideration of the panel opinion, we treat their petition as such in accordance with Eleventh Circuit Rule 26(f) and Rule V.C.b(1) of our Internal Operating Procedures.[2] See Lewis v. Hillsboro Transit Authority, 726 F.2d 668, 669 (11th Cir.1984).
 
 
 2
 In their petition, the defendants seek reconsideration of our holding that they are not entitled to qualified immunity. On rehearing, we reaffirm our holding that private defendants are entitled to qualified immunity in section 1983 suits seeking damages on account of unconstitutional attachments. However, we modify our holding that the defendants here have not demonstrated that they are entitled to summary judgment on a claim of qualified immunity. Therefore, except for the statement of the facts and our discussion regarding the availability of qualified immunity to private defendants in the circumstances presented here (that portion of the opinion encompassed by headnotes 5 and 6 at pages 1440-42), our prior opinion is vacated and the following discussion is substituted in its place.
 
 
 3
 We now address whether the defendants here are entitled to prevail on their claim of qualified immunity. In Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court promulgated an objective standard for determining whether government officials, generally shielded from liability for civil damages, were entitled to qualified immunity in a particular case. The court held that such officials are, "shielded from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[3] As Harlow 's emphasis on objective criteria suggests, the question of whether a statutory or constitutional right was clearly established at the time that the alleged wrong was committed is a question of law to be determined by the court. Mitchell v. Forsyth, 472 U.S. 511, 526, 528 n. 9, 105 S.Ct. 2806, 2815-2816 n. 9, 86 L.Ed.2d 411 (1985); Joseph v. Brierton, 739 F.2d 1244, 1249 (7th Cir.1984); Czurlanis v. Albanese, 721 F.2d 98, 108 and n. 8 (3d Cir.1983); Trejo v. Perez, 693 F.2d 482, 488 (5th Cir.1982). The appellants are thus entitled to de novo review on this issue.
 
 
 4
 Here the right at issue is a debtor's right to due process when his property is attached by a private creditor pursuant to state statute. Mr. Jones claims that in 1982 he had a clearly established right to notice and a hearing before the attachment of his property. We now analyze the relevant Supreme Court cases on this issue to determine whether this assertion is correct.
 
 
 5
 We turn first to Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In that case, the Supreme Court struck down a Wisconsin statute which authorized the prejudgment garnishment of wages, which the court noted were "a specialized type of property presenting distinct problems in our economic system." 395 U.S. at 340, 89 S.Ct. at 1822. The suing creditor could garnish the debtor's wages without demonstrating a lien or prior interest in the property attached, and the attachment could be accomplished without judicial supervision. Holding that these safeguards were inadequate, the court found the statute unconstitutional for failure to provide pregarnishment notice and hearing to the debtor.
 
 
 6
 In its next treatment of this issue, a seven member court invalidated the replevin statutes of Florida and Pennsylvania, which statutes authorized the sellers of goods to obtain repossession of their wares "without judicial order, approval or participation." The writ of replevin could be issued by a court clerk on "the bare assertion of the party seeking the writ that he is entitled to one." Fuentes v. Shevin, 407 U.S. 67, 74, 92 S.Ct. 1983, 1991, 32 L.Ed.2d 556 (1972). The court found both statutes further flawed because the only post-deprivation remedy granted to the debtor was the eventual opportunity to be heard as the defendant should the creditor commence an action to determine his rights to repossession. In light of these procedural inadequacies the court declared both statutes unconstitutional.
 
 
 7
 However, in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the court upheld a Louisiana sequestration statute which did not require that the debtor receive preseizure notice or hearing. The Mitchell court determined that when the debtor is provided with a variety of procedural safeguards which protect his interests, a sequestration or attachment statute is not facially unconstitutional because it does not provide for preseizure notice or hearing. The court distinguished the Louisiana sequestration statute from those invalidated in Sniadach and Fuentes on several different grounds. First, under the Louisiana statute a writ of sequestration was available only to a creditor with a mortgage or lien in the property. Second, the statute authorized the writ, "only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts" shown by a verified petition or affidavit. Mitchell, 416 U.S. at 616, 94 S.Ct. at 1904. Further, in the specific district at issue, this requisite showing had to be made to a judge, so that "Mitchell was not at the unsupervised mercy of the creditor and court functionaries." Id. The statute provided for, "judicial control of the process from beginning to end." Id. In addition, the statute provided that, "the defendant [debtor] by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued." Id. at 622, 94 S.Ct. at 1907. The Supreme Court interpreted this provision as allowing for an immediate hearing to determine whether the writ was wrongfully issued. Id. at 618, 94 S.Ct. at 1905. Finally, the debtor was protected by a provision in the statute which allowed for damages for the wrongful issuance of a writ, and for attorney's fees, "whether the writ is dissolved on motion or after trial on the merits." Id. at 617, 94 S.Ct. at 1905.
 
 
 8
 The final link in this chain of cases came in the court's next term, when it invalidated a Georgia attachment statute which did not provide some of the procedural safeguards approved in Mitchell. The Georgia statute allowed a creditor to garnish property, absent a bond, via a writ of garnishment issued by a court clerk, with no guarantee that the writ could be challenged unless the debtor could file a bond to protect the plaintiff creditor. North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1974). The court in Di-Chem again reviewed those procedural safeguards which had enabled the Louisiana statute in Mitchell to comport with the requirements of due process. It noted that under the Louisiana statute the creditor had a lien or prior interest in the property; filed a bond to obtain the writ, was required to submit an affidavit, "clearly setting out the facts entitling the creditor to seek sequestration" to a judge; and was entitled to "an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued." Di-Chem, 419 U.S. at 607, 95 S.Ct. at 722.[4] Finding these protections lacking, the court declared the Georgia garnishment statute unconstitutional, for failure to provide pre-deprivation notice and hearing.
 
 
 9
 Having carefully examined the Supreme Court pronouncement in this area, we cannot say as a matter of law that at the time Mr. Jones' cotton pickers were seized, a debtor was entitled to preseizure notice and hearing in all instances of prejudgment attachment. Thus, we cannot say that the single fact that no preseizure hearing occurred means that the defendants here forfeit any claim to qualified immunity.
 
 
 10
 However, it is clear that by 1982 Supreme Court precedent had granted debtors certain clearly established due process rights upon the attachment of their property. By 1982 the Fifth Circuit had already determined that Mitchell and Di-Chem required that a prejudgment seizure be authorized by a judge who has discretion to deny issuance of the appropriate writ. Johnson v. American Credit Company of Georgia, 581 F.2d 526, 533-35 (5th Cir.1978).[5] Similarly, two readily apparent common threads run through all of the Supreme Court decisions outlined above. First, a debtor must be given the opportunity to challenge the seizure in a prompt manner. Second, his financial interest must be protected in the event of a wrongful prejudgment attachment, either via the posting of a bond by the creditor who seeks the writ, or by allowing an action for damages suffered as a result of a wrongful attachment. Thus, while a right to a preseizure hearing was not "clearly established" by 1982, a reasonable person would have known that an attachment accomplished without the three procedural safeguards mentioned above was clearly unconstitutional.
 
 
 11
 Now we must determine whether the appellant's conduct violated these clearly established constitutional standards.[6] After reviewing the record, and construing the facts in the light most favorable to Mr. Jones, we must conclude that the actions of Preuit and Mauldin did not violate those rights of Mr. Jones which were clearly established at the time the seizure of his cotton pickers took place. P & M's actions were commensurate with the protections that were approved as adequate due process in Mitchell.[7] First, P & M presented a sworn affidavit specifying the specific facts entitling P & M to an attachment of each picker. The affidavit indicated that Mr. Jones was justly indebted to P & M in a specific amount for labor and materials furnished to a specific cotton picker; that Mr. Jones had failed to pay for the repairs after lawful demand; and that the attachment was not sued out for the purpose of vexing or harassing the debtor. Second, a state judge issued the writ, and retained "judicial control of the process from beginning to end." Mitchell, 416 U.S. at 616, 94 S.Ct. at 1904. Third, the record indicates that service of the order of attachment and the complaint to enforce P & M's mechanic's lien was made upon Mr. Jones in a lawful manner. Fourth, P & M posted a bond, "to minimize the risk that the ex parte procedure [would] lead to a wrongful taking." Id. at 617, 94 S.Ct. at 1905. Finally, Alabama law gave Mr. Jones an opportunity to challenge the attachment in a timely manner.[8] Thus, P & M's actions were not clearly unconstitutional, and the appellees are entitled to immunity from damages.
 
 
 12
 Appellants dispute the notion that Alabama law afforded Mr. Jones a reasonably prompt opportunity to challenge the attachment after execution of the writ. We find that such a right did exist. As previously noted, P & M relied upon Alabama's mechanic's lien provisions in obtaining the writ of attachment. Alabama Code Sec. 35-11-110 (1975) creates a lien in favor of a repairman against any vehicle he repairs. Alabama Code Sec. 35-11-111 (1975) provides that any person entitled to a mechanic's lien may enforce it by obtaining a writ of attachment. Other than requiring a bond and an affidavit, Sec. 35-11-111 does not lay out the procedure for obtaining the writ, however. The actual procedures for attachment are set out in a separate section of the Alabama Code, 6-6-40 et seq.[9] As the district court noted, Ala.Code Sec. 6-6-148 provides that:
 
 
 13
 At any time within three years of the suing out of the attachment, before or after the action is determined, the defendant in attachment may commence an action on the attachment bond and may recover such damages as he has actually sustained if the attachment was wrongfully sued out and, if sued out maliciously as well as wrongfully, the jury may, in addition, give vindictive damages.
 
 
 14
 An action to challenge the attachment under section 6-6-148 may be brought by the debtor before, during, or after the action in which the debtor appears as a defendant. First National Bank v. Cheney, 120 Ala. 117, 23 So. 733 (1898); Liversage v. Gibson, 222 Ala. 672, 133 So. 715 (1931).[10]
 
 
 15
 The only limitation with this remedy is that it only allows a debtor to challenge a "wrongful" attachment. However, in that sense it is exactly like the post-seizure remedy which was approved by the Supreme Court as constitutionally adequate in Mitchell. In Louisiana, also, the debtor could challenge the writ "by contradictory motion unless the plaintiff proves the grounds upon which the writ was issued." [emphasis supplied]. This clearly allows only the opportunity to challenge wrongful attachment. In fact, the Alabama remedy is broader in that requiring the debtor to challenge the writ "by contradictory motion" may mean that the debtor may only do so while he is a defendant in the action brought by his creditor. Alabama provides a separate cause of action to the debtor, which may be used before, during, or after the action brought by the creditor.[11]
 
 
 16
 Of course, in this case Mr. Jones failed to avail himself of this opportunity to challenge the attachment. However, the fact that he did not avail himself of the opportunity given to him under Alabama law does not effect our analysis. In the context of deciding whether these defendants were entitled to qualified immunity, we are deciding whether or not their actions were clearly unconstitutional. They did not obtain a writ under a statute which provided no opportunity to challenge the writ. Therefore, their actions did not violate this aspect of the debtor's constitutional rights.[12]
 
 
 17
 We hasten to point out that outside this context, the availability or nonavailability of a post-deprivation remedy is only relevant to a section 1983 action where the deprivation takes place pursuant to a "random, unauthorized act," such that the complaint fails to state a claim under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and its progeny. Where, as here, the deprivation occurred as the result of an established state policy, the availability of the post-deprivation state remedy does not bar the availability of a section 1983 action. Logan v. Zimnmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Thus, in this case, while the existence of a post-deprivation remedy does not act to bar Mr. Jones' section 1983 action, the existence of a post-deprivation remedy, in this context, helps to establish that the defendants are entitled to qualified immunity.[13]
 
 
 18
 To conclude, we find that P & M's actions did not violate clearly established constitutional rights of which a reasonable person would have known.[14] They are thus entitled to immunity from damages insofar as the seizure of Mr. Jones' cotton pickers without a hearing pursuant to Alabama Code Sec. 35-11-111 may have violated Mr. Jones' constitutional rights.
 
 
 19
 However, Mr. Jones' contentions do not rest solely on Preuit & Mauldin's invocation of Alabama's prejudgment attachment statute. He also claims, and this claim is supported by an affidavit of someone claiming to be an eyewitness, that an employee of Preuit & Mauldin attempted to "rig" the judicial sale which was held after Preuit & Mauldin obtained a default judgment against Mr. Jones for the money owed them for repairs on the cotton pickers. This claim, on its face, is wholly separate from any contention that the Alabama attachment law is unconstitutional, or that Preuit & Mauldin's actions in obtaining a writ of attachment were unconstitutional. However, this separate, unidentified claim suffers from a fatal flaw. As the Supreme Court made clear in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982):
 
 
 20
 [Under Sec. 1983] the party charged with deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargable to the State.
 
 
 21
 457 U.S. at 937, 102 S.Ct. at 2754.
 
 
 22
 Neither the complaint nor any document filed in district court asserts that the action allegedly undertaken by the employee of Preuit & Mauldin to dissuade another potential bidder from bidding on the cotton pickers was undertaken in collusion with any state official who was overseeing the sale. Indeed, there is no assertion at all that the P & M employee who allegedly undertook to "rig" the sale was acting pursuant to, or under the color of, state law. Thus, this claim was also correctly dismissed by the district court for failure to meet the most basic requisites of a section 1983 action.[15]
 
 
 23
 Finally, we turn to Mr. Jones' contention that the district court abused its discretion in failing to declare Alabama's attachment statute unconstitutional on its face. The denial of a motion for summary judgment will be reversed only for an abuse of discretion. Johnson v. Bryant, 671 F.2d 1276, 1279 (11th Cir.1982). The statute is constitutionally adequate in that it requires the posting of a bond, Ala.Code Secs. 6-6-45, 35-11-111, and because it affords an opportunity to challenge the writ, Sec. 6-6-148. However, in the face of Johnson 's holding that a writ of attachment must be issued by a judicial officer with authority to deny the writ, 581 F.2d at 534, Alabama's attachment statute may be constitutionally suspect to the degree that Sec. 6-6-43 authorizes a nonjudicial officer to issue a writ of attachment.[16]
 
 
 24
 Nonetheless, in this case a judge issued the writ, not a clerk. Thus, P & M was not acting under, and Mr. Jones was not adversely affected by, that part of the statute which may be unconstitutional. Hence, Jones lacks standing to challenge that aspect of the law, and we do not hold it invalid.[17] When a plaintiff is seeking a declaratory judgment that a state statute is unconstitutional, the requirements for standing must be strictly enforced. See Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965). Nor do P & M forfeit their qualified immunity because a separate clause of the attachment statute may pose constitutional concerns.[18]
 
 
 25
 In light of the foregoing discussion, we find the appellees were entitled to qualified immunity. On that basis the judgment of the district court is AFFIRMED.
 
 JOHNSON, Circuit Judge, dissenting:
 
 26
 I agree with the majority's holding that Jones was entitled to preseizure notice and hearing only if P & M obtained the writs of attachment through a procedure that lacked the safeguards outlined in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In Mitchell, the Supreme Court held that preseizure notice and hearing is not required if, in order to obtain a writ of attachment, the creditor must file an affidavit setting forth the specific facts entitling him to relief; if the creditor must post a bond to compensate the debtor for any damages resulting from a wrongful attachment; if the writ of attachment can be issued only by a judge with discretion to deny the writ; and, if the debtor is entitled to an immediate postseizure hearing at which the creditor must prove his entitlement to the writ. I disagree, however, with the majority's conclusion that those safeguards were present here. Specifically, I believe that the judge who issued the writs was not vested with sufficient discretion to satisfy the dictates of Mitchell. Therefore, I would hold that Jones was entitled to preseizure notice and hearing and thus that the attachments violated his clearly established constitutional rights.
 
 
 27
 The judge who issued the writs of attachment here could not inquire into the veracity of P & M's allegations. As the majority indicates, the attachments here were obtained under Alabama's mechanic's lien statute. Alabama Code Sec. 35-11-110 creates a lien in favor of a repairman against any vehicle he repairs, and Alabama Code Sec. 35-11-111 outlines the procedures for enforcing that lien by attachment. Although Section 35-11-111 requires both the filing of an affidavit setting forth the plaintiff's entitlement to relief and the posting of a bond payable to the defendant in case of a wrongful attachment, that section does not specify who is authorized to issue the writ. Instead, it provides only that the writ is to be issued "by any officer authorized to issue such writs." Id. Therefore, in order to determine who can issue such a writ and what discretion the issuing officer possesses, resort must be had to the provisions of Alabama's general attachment statute. Those provisions authorize a circuit court judge to issue a writ of attachment. Ala.Code Sec. 6-6-43. However, nothing in those provisions authorizes a circuit court judge to go behind a creditor's allegations in order to determine their validity. In actions involving either the seizure of property under the detinue statute or the enforcement of a security interest, Ala.R.Civ.P. 64(b) mandates a judicial inquiry into the facts supporting the need for an attachment without prior notice. However, both Rule 64 and its Committee Comments indicate that the special procedures established therein apply only to actions in detinue or in enforcement of a security interest and that those procedures are in addition to the procedures required under the general attachment statute.[1] Consequently, in issuing a writ of attachment under Section 35-11-111, the circuit court judge's function is solely to determine the adequacy of the plaintiff's allegations. If the facts as alleged would entitle the plaintiff to relief, the judge must issue the writ. He cannot determine whether the allegations are in fact true.
 
 
 28
 Such limited "discretion" fails to provide the meaningful judicial participation contemplated in Mitchell. The safeguards outlined in Mitchell are a substitute for prior notice and hearing because, like preseizure notice, they protect debtors against "abuse by creditors without valid claims." 416 U.S. at 614. Therefore, judicial participation in issuing a writ of attachment does not provide a substitute for preseizure notice unless that participation helps "minimize the risk that the ex parte procedure will lead to a wrongful taking." Id. at 617, 94 S.Ct. at 1905. Judicial participation does not meaningfully reduce the risk of a wrongful attachment unless the judge can, if necessary, inquire into the truthfulness of the creditor's allegations. Otherwise the judge's involvement would amount to nothing more than the very type of ministerial determination that the Supreme Court has struck down as insufficient to provide due process when performed by a clerk. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). This is not to say, however, that a judge must put every creditor to his proof or that a creditor, prior to issuance of a writ of attachment, must prove his claim by a preponderance of the evidence. Rather, the judge must possess the ability, in the exercise of his discretion, to require more proof from the creditor than the creditor's affidavit in deciding whether to issue a writ of attachment without prior notice to the debtor. For example, under certain circumstances the judge may wish to examine the documents giving rise to the creditor's interest in the property. If such proof is not forthcoming, the judge should be able to deny issuing the writ until the debtor is provided notice and an opportunity for a hearing.
 
 
 29
 The majority reads Mitchell as requiring no more from the judge than that he determine the facial sufficiency of the allegations. They base their reading on the ground that the state sequestration statute upheld in that case allowed the judge to issue the writ "only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by verified petition or affidavit." 416 U.S. at 616, 94 S.Ct. at 1904. However, nothing in that statute prohibited the court from requiring additional proof. Furthermore, the Court emphasized in Mitchell that a preseizure hearing was unnecessary because the issues involved in that case--the existence of a vendor's lien and the purchaser's default--were particularly suited for documentary proof. Id. at 617-18, 94 S.Ct. at 1905. That a claim is amenable to documentary proof helps reduce the risk of a wrongful attachment only if the court issuing the writ can examine any supporting documents. Therefore, I do not read Mitchell as narrowly as the majority does. Consequently, I believe that the attachments here violated Jones's clearly established constitutional rights. Furthermore, I adhere to the remainder of the original panel opinion and believe that the award of summary judgment in favor of the defendants should be reversed.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The facts of this case are set out in the panel opinion, Jones v. Preuit & Mauldin, 808 F.2d 1435 (11th Cir.1987)
 
 
 [2]
 Eleventh Circuit Rule 26(f) provides:
 A suggestion for rehearing en banc will also be treated as a petition for rehearing before the original panel.
 Rule V.C.b(1) of our Internal Operating Procedures provides:
 The panel has control P.H.C.--although a copy of the suggestion for rehearing en banc is distributed to each panel judge and every active judge of the court, the filing of a suggestion for rehearing en banc does not take the case out of the plenary control of the panel deciding the case. The panel may, on its own, grant rehearing and may do so without action by the full court.
 
 
 [3]
 The court further held that, once it is determined that the right was clearly established, "if the official pleading the [qualified immunity] defense claims extraordinary circumstances and can prove that he neither knew or should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors."
 This seems to allow a small margin of subjectivity in "extraordinary circumstances." The court did not attempt to define what "extraordinary circumstances" it had in mind. However, we do not find the subjectivity element relevant here, as seeking a writ of attachment is not normally a "extraordinary" event.
 
 
 [4]
 The opinion of the court in Di-Chem was a four-justice plurality. Justice Powell concurred in the judgment, explaining that,
 I am not in accord with the Court's suggestion that the Due Process Clause might require that a judicial officer issue the writ of garnishment.... When combined with the availability of the garnishor's bond to compensate for any harm caused, the possibility of prompt correction of possible error suffices to satisfy the requirement of procedural due process in this context.
 Id., 419 U.S. at 611, n. 3, 95 S.Ct. at 725, n. 3 (Powell, J., concurring).
 Thus, the opinion produced a majority which felt that the posting of a bond and the opportunity to initiate a prompt post seizure hearing were essential requirements of due process.
 
 
 [5]
 The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)
 
 
 [6]
 On this issue also, because we are reviewing an order granting summary judgment, we must independently review the facts relied upon by the district court in determining that qualified immunity was available. Morrison v. Washington County, Alabama, 700 F.2d 678 (11th Cir.1983)
 
 
 [7]
 In evaluating P & M's conduct, we are concerned only with whether their actions were clearly unconstitutional with respect to the prejudgment seizure of the cotton pickers. This harmed Mr. Jones only insofar as he lost use of the pickers prior to judgment. The ultimate, permanent loss of the pickers occurred pursuant to a judicial sale undertaken to execute a lawfully entered default judgment. The prejudgment seizure is not related to the ultimate loss. Section 35-11-111 allows one with a mechanic's lien to obtain a writ of attachment. A.R.C.P. 64(a) authorizes a prejudgment attachment, "for the purpose of securing satisfaction of the judgment ultimately to be entered in the action...." However, there is no reason why P & M could not have obtained a judgment, then obtained a writ of attachment, then sold the pickers. Mr. Jones is only challenging the procedures for prejudgment attachments, which do not authorize the final disposal of the property
 
 
 [8]
 It is important to note that nothing in the Supreme Court's opinion in Mitchell required that the judge issuing the writ have the authority to determine the veracity of the creditor's allegations. Under the Louisiana statute upheld in Mitchell, the judge issued the writ "if the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by verified petition or affidavit." Id. at 616. Our reading of Mitchell requires that the issuing judge be convinced that if what the creditor alleges is true, the creditor is entitled to a writ of attachment. The judge must have the authority to make sure that the affidavit alleges the necessary grounds for issuing the writ. Requiring any further investigation at that point would vitiate Mitchell and essentially require a preseizure hearing in every case, which is plainly not required. Further, as in Mitchell where the attachment was based on a vendor's lien, the specific facts necessary to establish grounds for a mechanic's lien are easily established by documentary proof, thus decreasing the likelihood that a seizure will prove to have been a mistake. See Mitchell, 416 U.S. at 612, 95 S.Ct. at 725
 
 
 [9]
 The parties have spent a good deal of their effort on appeal arguing over whether Alabama Rule of Civil Procedure 64(b) applies. This rule provides that a defendant may obtain a prejudgment (as opposed to a preseizure) hearing on the issue of dissolution of a writ of attachment if the debtor serves a written request on counsel for the creditor within five days from the date of seizure of the property. The district court erred in deciding that 64(b) was applicable to this case
 By its terms, Rule 64(b) applies only to actions in detinue and to actions "whereby the owner of a security interest in personal property seeks to recover possession of said personal property prior to judgment for...." P & M's actions did not fall into either category. Detinue is an action for the recovery of personal property wrongfully detained. Ivey v. Verbeck, 461 So.2d 813, 815-16 (Ala.Civ.App.1984). P & M sought payment of repair bills; therefore its actions were in debt, not detinue. Foshee v. General Telephone Company of the Southeast, 295 Ala. 70, 322 So.2d 715, 717 (1975). Nor did P & M's actions satisfy the second category, for P & M lacked an enforceable security interest in the cotton pickers. A security interest is not enforceable and does not attach unless either the secured party is in possession of the collateral or the debtor has signed a security agreement that contains a description of the collateral. Ala.Code Sec. 7-9-203 (1975). P & M had neither possession of the cotton pickers nor a security agreement signed by Jones. Therefore, P & M could not have proceeded under Rule 64(b). Cf. Ex Parte Martin, 412 So.2d 815, 817 (Ala.Civ.App.1982) (extra procedural protections available under Rule 64(b) do not apply to statutory landlord's liens created under Alabama code Secs. 35-9-60 through 65).
 This does not end the inquiry, however. Just because Mr. Jones was not entitled to a prompt hearing under the elaborate procedures laid out for detinue and security interests in Alabama Rule of Civ.P. 64(b) does not mean that Alabama law did not provide him with a perfectly adequate opportunity to challenge the writ under Ala.Code Sec. 6-6-148, as explained above.
 
 
 [10]
 A.R.C.P. 65.1 also gives litigants the right to challenge writs that are wrongfully executed, and Mr. Jones did file such a claim, post judgment, which was denied by Judge Burney on Nov. 29, 1983
 
 
 [11]
 Appellant seems to concede that A.R.C.P. 64(b) provides an adequate opportunity to challenge a writ, yet never explains why 64(b) provides more than an opportunity to challenge a "wrongful" attachment
 
 
 [12]
 Appellant also claims that while the attachment order was being carried out, one of the cotton pickers accidentally fell off a truck and was damaged, thereby decreasing the amount Jones could obtain for it at the judicial sale. Such negligent acts do not support a cause of action under Sec. 1983. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662, 665 (1986)
 
 
 [13]
 We find the defendant's argument that they did not act pursuant to an established state policy to be totally without merit. However, given our disposition of the case, we need not address the issue in more detail. Nor do we express an opinion on P & M's arguments regarding waiver, res judicata or respondeat superior
 
 
 [14]
 P & M also argues that they are immune because their actions preceded the Supreme Court's decision in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), wherein the court held that private actors who invoked presumptively valid attachment statues were "state actors" for the purpose of making out a Sec. 1983 claim. Given our disposition of the case regarding the substance of P & M's actions, we need not reach this issue
 
 
 [15]
 The affidavit containing this assertion was filed by itself, unconnected to any document. We construe it as an attempt to avoid summary judgment by creating an issue of material fact. On appeal Jones attempts to relate this to P & M's "good faith." However, good faith in carrying out the sale (under Ala.Code Sec. 8-1-100 which forbids arranged bidding) is unrelated to the attachment claim, and the claim regarding the sale falls for failure to show state action
 
 
 [16]
 This section reads:
 Sec. 6-6-43. By whom issued.
 In the first and second cases mentioned in section 6-6-41 [where a defendant lives out of state or absconds] an attachment may be issued by any judge of the circuit court, returnable to any county in the state, or by the clerk of the circuit court, judge of probate or any district court judge, within their respective counties; in the third and fourth cases, only by a judge of the circuit court or judge of probate, returnable to any county.
 
 
 [17]
 Under Alabama code Sec. 6-6-143 a judge must permit the plaintiff to amend any defect of form of substance in an affidavit, bond or attachment. However, we have not discovered any Alabama law which indicates that the reviewing court must allow a questionable writ to go forward. Thus, we conclude that Alabama law does not suffer from the same flaw which rendered the Georgia attachment statute unconstitutional in Johnson. In Georgia, a judge, magistrate, justice of the peace, or clerk of any court of record, when presented with a creditor's affidavit and bond, had the "duty" to issue an attachment against the defendant. Johnson 581 F.2d at 534. We find nothing in Alabama law to indicate that the issuing officer's discretion is so limited
 
 
 [18]
 Mr. Jones also intimates that the Alabama statute is unconstitutional because it allows seizure without a showing that the property to be seized is in imminent danger of destruction. However, in Mitchell, the Louisiana statute which was approved as constitutional did not require that the party seeking the writ make such a showing. All that statute required was that it be "within the power" of the defendant to dissipate or move the assets sought to be seized. 416 U.S. at 623, 94 S.Ct. at 1907. Proof of imminent dissipation is clearly not a constitutional prerequisite for attachment
 
 
 [1]
 As the majority notes, supra note 9, P & M's action to enforce its mechanic's lien did not constitute either an action in detinue or an action to enforce a security interest. Therefore, P & M could not have proceeded under Rule 64(b)