FOLSOM INVESTMENT COMPANY, INC., et al., Plaintiffs-Appellants,

v.

Maxie R. MOORE, et al., Defendants-Appellees.

FOLSOM INVESTMENT COMPANY, INC., and Daniel R. Scullin, Plaintiffs-Appellants,

v.

ST. PAUL FIRE & MARINE INS. CO., et al., Defendants-Appellees.

Kenneth C. SCULLIN, Plaintiff-Appellant,

v.

ST. PAUL FIRE & MARINE INS. CO., et al., Defendants-Appellees.

No. 80-3342.

United States Court of Appeals, Fifth Circuit.* Unit A

Aug. 6, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Kenneth C. Scullin, pro se.

Daniel R. Scullin, pro se.

David R. Katner, New Orleans, La., for Folsom Inv. Co., Inc.

Louis M. Jones, New Orleans, La., for Governor Edwards.

M. J. Le Gardeur, Jr., Covington, La., for T. M. Burns.

A. W. Mysing, Jr., Covington, La., for Max Moore and J. Holliday.

Before CHARLES CLARK and RANDALL, Circuit Judges, and SHARP,** District Judge.

CHARLES CLARK, Circuit Judge:

The district court dismissed an action brought under 42 U.S.C. § 1983 for money damages and declaratory relief based on an allegedly wrongful and unconstitutional attachment in a Louisiana state court proceeding on the ground that the Louisiana court's determinations were res judicata.

Plaintiffs appealed and argued that the Louisiana judgment was not res judicata. At oral argument, we requested the parties to address an additional question: Whether the setting in motion of a state attachment provision by a private party constituted action under color of state law. After oral argument was held, the Supreme Court granted certiorari to decide the latter question. The Supreme Court has now determined that the invocation of a state attachment statute is action under color of state law. *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The Supreme Court's decision forecloses an affirmance on state action grounds. Our conclusion that the district court erred in granting the defendants summary judgment on res judicata grounds requires that we reverse. However, we hold that a private party who invokes a presumptively valid state attachment statute is entitled to a good faith immunity from monetary liability under § 1983. We remand to the district court for appropriate findings on the issue.

I

Max Moore, Julian Holliday, and Tom Burns were involved in a real estate transaction with Kenneth Scullin. As agents, they waived a $40,000 commission fee in consideration of an exclusive listing arrangement. Moore and Holliday, defendants-appellees in the instant action, brought suit on April 22, 1974 against Folsom Investment Company, Inc., Daniel Scullin, and Kenneth Scullin in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana. Burns, also an appellee in this action, intervened as a party plaintiff, joining in the allegations by Moore and Holliday that Folsom and the Scullins had breached an exclusive real estate listing arrangement and thus, were liable for damages.

In the fall of 1974, the State court plaintiffs sought a writ of attachment against approximately 200 acres of land in St. Tammany Parish owned by Daniel Scullin, a

---

** Chief Judge of the Northern District of Indiana, sitting by designation.

resident of Mississippi. A nonresident writ of attachment was duly issued by the Louisiana trial court judge on September 30, 1974. In early November, the judge, responding to a subsequent petition, issued a nonresident writ of attachment against an additional 42.15 acres of land allegedly owned by Daniel Scullin.

On January 29, 1975, Kenneth Scullin moved to dissolve the attachment of the 42.15 acres on the ground that the land was wrongfully and illegally attached. The trial court judge dissolved the attachment of the 42.15 acres, increased bond on the approximately 200 acres already attached, and refused to award Kenneth Scullin damages for wrongful attachment of the 42.15 acres.

During the period between late 1976 and the summer of 1977, the Scullins made several unsuccessful attempts to get all or parts of their case into federal court. In November 1976, Folsom and the Scullins filed a notice of removal in Louisiana state court and a petition for removal in federal district court. On February 9, 1977, the case was remanded without opposition to the Louisiana state court. Daniel Scullin filed two diversity actions against his state court adversaries in federal court on July 13, 1977. The first was a $1,000,000 damage action alleging wrongful attachment of approximately 200 acres. The second was a $1,800,000 damage action sounding in defamation. The first action was dismissed on the ground that the matter was already in the process of being adjudicated in the Louisiana courts. The second was dismissed on the motion of plaintiff Scullin. Kenneth Scullin also instituted a federal action alleging wrongful attachment. That action was dismissed for want of diversity of citizenship.

On June 23, 1977, Folsom and the Scullins re-focused on the Louisiana proceeding and filed a motion to dissolve the nonresident writ of attachment on the 200 acres, alleging that it was "wrongfully and illegally

obtained," and reserving "their rights to seek reimbursement for the damage and injury sustained by them." The Louisiana court rendered judgment on the underlying action for the attaching plaintiffs in November 1977, awarding damages of $48,500 for breach of the exclusive listing arrangement and ordering that the nonresident attachment of the 200 acres be maintained.

Folsom and the Scullins sought a new trial which was denied. They appealed to the First Circuit Court of Appeal, and after affirmance, sought a rehearing. When that was unsuccessful they petitioned for review in the Louisiana Supreme Court. That was denied. Folsom and the Scullins chose not to petition the United States Supreme Court for a writ of certiorari and satisfied the judgment against them. In 1979, the writ of attachment on the 200 acre tract was vacated.

Upon completion of the above-described action in the Louisiana state courts, which was interrupted by several attempted forays into federal court, Folsom and the Scullins brought the instant action claiming damages for the wrongful and unconstitutional attachment of their 200 acres and seeking a judgment declaring the Louisiana nonresident attachment scheme to be invalid under the due process and equal protection clauses of the Constitution of the United States. Plaintiffs specifically based their causes of action on 42 U.S.C. § 1983, the fifth and fourteenth amendments of the United States Constitution, and pendent state claims.[1]

Folsom and the two Scullins each sought $1,000,000 in damages from Moore, Holliday, and Burns, the successful plaintiffs in the Louisiana state court action. Plaintiffs also named Louisiana Governor Edwin W. Edwards as a defendant in the federal action, and sought a declaration that Louisiana's statutory nonresident attachment provisions are unconstitutional. The insurance

---

1. In their Complaint, plaintiffs also cited 11 U.S.C. § 69, a provision of the old bankruptcy code not retained in the new codification, but deleted that claim in their First Amended Complaint. The plaintiffs also purported to rely on

42 U.S.C. § 1981. However, that claim is without merit due to the plaintiffs' failure to allege racial discrimination. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 285–86, 96 S.Ct. 2574, 2581, 49 L.Ed.2d 493 (1976).

carriers of the attorneys who represented Moore, Holliday, and Burns in the state action, St. Paul Fire & Marine Insurance Company, Allegheny Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, were named as defendants in two actions brought by Folsom and the Scullins. These actions were later consolidated with the main action.

The defendants in the consolidated cases promptly filed a motion for summary judgment, attorney's fees, damages for the filing of frivolous complaints, and protective orders enjoining further litigation of the matter. The district court granted the motion for summary judgment as to all of the defendants.[2] The court held that the action was barred by res judicata based on the Louisiana proceedings. Appellants argue here that since the constitutional validity of the attachment was not litigated in the Louisiana court, res judicata does not apply.

## II

### A

The manner in which state court judgments are to be given preclusive effect in federal court is explicitly governed by federal statutory law. The Full Faith and Credit Act, 28 U.S.C. § 1738,[3] "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, —— U.S. ——, ——, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). *See also Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Howell v. State Bar of Texas*, 674 F.2d 1027, 1031 (5th Cir. 1982).

*McCurry*, which held that cross-forum preclusion[4] is applicable in § 1983 actions, did not explain precisely how a federal court is to ascertain the scope of a prior state court decision's preclusive effect. 449 U.S. at 93 n.2, 105 n.25, 101 S.Ct. at 414 n.2, 420 n.25. In *Kremer*, the Court explained that the words of the Full Faith and Credit Act are to be taken at face value:

> It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the state from which the judgment is taken.

*Kremer*, —— U.S. at ——, 102 S.Ct. at 1897. *Kremer* apparently dooms the assumption of many courts and commentators that federal courts may be free to grant *greater* preclusive effect to state court judgments than would the courts of the judgment-rendering state.[5] Thus, we are

---

**2.** As to the defendant, Governor Edwards, the order was based on mootness. The Complaint against Allegheny Mutual Casualty was dismissed on the ground that no such insurance company existed.

**3.** Section 1738 provides that state

judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken.

28 U.S.C. § 1738.

**4.** Cross-forum preclusion is the application of preclusion principles to bar relitigation of matters in one jurisdiction that were previously litigated in the courts of a different jurisdiction. The cross-forum preclusion pertinent here arises when a matter litigated in the state courts is brought before a federal court.

**5.** *See Reimer v. Smith*, 663 F.2d 1316, 1325–26 (5th Cir. 1981); *Gresham Park Community Org. v. Howell*, 652 F.2d 1227, 1243 & n.46 (5th Cir. 1981); A. Vestal, *Res Judicata/Preclusion* 492 (1969); Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317, 326–27 (1978). The above-cited authorities merely treated the question as an open one without purporting to resolve it. However, the question had actually been resolved. In 1903, the Supreme Court held that a federal court "can accord [a state judgment] no greater efficacy" than would the judgment-rendering state. *Union & Planters' Bank v. Memphis*, 189 U.S. 71, 74, 23 S.Ct. 604, 606, 47 L.Ed. 712 (1903). *Accord, Oklahoma Packing Co. v. Oklahoma Gas & Electric Co.*, 309 U.S. 4, 7, 60 S.Ct. 215, 217, 84 L.Ed. 537 (1940); *Wright v. Georgia R.R. & Banking Co.*, 216 U.S. 420, 427, 30 S.Ct. 242, 245, 54 L.Ed. 544 (1910); *City of Covington v. First National Bank*, 198 U.S. 100, 107, 25 S.Ct. 562, 564, 49 L.Ed. 963 (1905); 1A, Pt. 2 *Moore's Federal*

not free to apply federal preclusion principles and must determine the preclusive effect of the Louisiana judgment by resort to the Louisiana law of res judicata.

**B**

Folsom and the Scullins, as defendants in the state court action brought by Moore, Holliday, and Burns, filed a motion to dissolve a nonresident writ of attachment placed on 200 acres, stating only that it had been "wrongfully and illegally obtained." The movants in the Louisiana action explicitly reserved "their rights to seek reimbursement for the damage and injury sustained by them." The trial court ruled that the attachment was valid and should be maintained. That ruling, affirmed on appeal, precluded recovery of damages for wrongful attachment.

Folsom and Scullins brought these civil rights actions in federal court for monetary and declaratory relief arising out of the very same attachment, which they now allege to be invalid under the due process and equal protection clauses of the United States Constitution. In addition to Moore, Holliday, and Burns, who were parties to the Louisiana action, the insurance carriers of the attorneys who represented them were also named as defendants. The district court granted the defendants' motions for summary judgment on the ground that Louisiana res judicata law barred relitigation of the issue of the attachment's validity.

Res judicata in Louisiana is a matter of civil law.[6] A recent article coauthored by a justice of the Louisiana Supreme Court noted that "the civilian concept of res judicata more freely permits relitigation of a contro-

versy than its common law counterpart." Dixon, Booksh & Zimmering, *Res Judicata in Louisiana Since Hope v. Madison*, 51 Tul. L.Rev. 611, 612 (1977). The Louisiana high court's disposition of *Mitchell v. Bertolla*, 340 So.2d 287 (La.1976), graphically substantiates that statement. In separate actions, Mrs. Mitchell sought to nullify a purchase option. Mrs. Mitchell unsuccessfully asserted nonpayment of rent and lesion beyond moeity as grounds for nullification in two actions. She later asserted fraud and misrepresentation as grounds for nullifying the option. The Louisiana Supreme Court held that the new suit represented a new "cause" and was not barred by res judicata.

A holding that Folsom and the Scullins may not under Louisiana law relitigate the validity of the attachment would directly conflict with *Mitchell v. Bertolla*. In the state court action, Folsom and the Scullins moved to dissolve the attachment of the 200 acre[7] tract on the ground that it was illegally obtained. This action likewise challenges the legality of the same attachment, and explicitly bases that claim on the unconstitutionality of the attachment scheme. Hence, the assertion of a new and distinct ground for relief is not precluded by res judicata.

**III**

At oral argument, we directed the parties' attention to *Lugar v. Edmondson Oil Co.*, 639 F.2d 1058 (4th Cir. 1981), a decision holding that a private party's action in invoking a state's attachment procedure does not amount to conduct under color of state law within the meaning of § 1983. The Supreme Court granted certiorari after oral argument in this case had been held. 452

---

Practice § 0.311[2] at 3176–77. The issue is of exceptional importance when the state rendering the first judgment has narrow preclusion rules.

**6.** The essential elements of res judicata under Louisiana law are:

The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the

demand must be between the same parties, and formed by them against each other in the same quality.

La.Civil Code Ann. art. 2286 (West 1965). The judicial interpretations of section 2286 magnify that statute's labyrinthine qualities.

**7.** The assertion of Folsom and the Scullins in their brief filed with this court that they never put in issue the validity of this attachment is belied by the record.

U.S. 937, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981). Accordingly, we deferred a decision in this case pending resolution of the state action issue by the Supreme Court.

■ The Supreme Court reversed the Fourth Circuit in *Lugar* and held that when a § 1983 plaintiff challenges the constitutionality of a state attachment procedure, as opposed to making mere nonconstitutional allegations of misuse or abuse of the statute, the private party who sets that attachment scheme in motion is to be considered a state actor. —— U.S. ——, ——, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982). Thus, insofar as Folsom and the Scullins have alleged that the Louisiana attachment scheme is violative of the constitution, the private parties who set that scheme in motion acted under color of state law.

■ However, the Supreme Court's decision in *Lugar* opens the door to another defense by the defendants here. Justice White, writing for the majority, noted that the problem of private individuals being held liable for invoking seemingly valid, but constitutionally infirm, state laws "should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense." —— U.S. at —— n.22, 102 S.Ct. at 2756 n.22. He suggested as a possibility the qualified immunity presently available to state officials. *Id.* Justice Powell, in a dissent concurred in by two other justices, agreed with Justice White's suggestion of an immunity. *Id.* at —— n.14, 102 S.Ct. at 2751 n.14 (Powell, J., dissenting). We hold that a private party who attempts to secure rights under a presumptively valid attachment statute may establish that he is immune from monetary damages and set forth standards for such an immunity.

■ The reasons for conferring such an immunity are obvious. The Louisiana legislature, in enacting the attachment legislation at issue here, conferred a commonly-granted statutory right on qualified litigants. To hold that a private party may be subject to constitutional tort damages for invoking in good faith presumptively valid legislation later held to be unconstitutional would be to visit the effects of unconstitutional action by the legislature on innocent citizens. We hold that a § 1983 defendant who has invoked an attachment statute is entitled to an immunity from monetary liability so long as he neither knew nor reasonably should have known that the statute was unconstitutional.

The standard we have adopted is identical to that the Supreme Court has prescribed for state officials performing discretionary functions. *See Harlow v. Fitzgerald,* —— U.S. ——, —— & n.30, 102 S.Ct. 2727, 2738 & n.30, 73 L.Ed.2d 396 (1982). Whether the precise contours of the rule will develop identically, we leave to future cases. At this juncture, for instance, we are unwilling to conclude for all times that a private citizen should be charged with the same degree of knowledge as to whether a statute or practice is unconstitutional that would be attributed to a public official. However, we have no doubt that the standard we prescribe in broad outline is sound.

We are not suggesting that the private citizen's immunity is derived from or intended to foster the immunity of the state official who actually enforces the attachment statute. The Supreme Court has taken a "functional" rather than a "derivative" approach to immunities. *See id.* at ——, 102 S.Ct. at 2734; *Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980). The private party who invokes a presumptively valid attachment law is not entitled to an immunity because the officer executing it is. Rather, quite independently, the private party is entitled to an immunity because of the important public interest in permitting ordinary citizens to rely on presumptively valid state laws, in shielding citizens from monetary damages when they reasonably resort to a legal process later held to be unconstitutional, and in protecting a private citizen from liability when his role in any unconstitutional action is marginal.

We do not regard *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63

L.Ed.2d 673 (1980), as a barrier to the creation of such an immunity. In that case, the Supreme Court held that since there was no history of immunity for municipal corporations extant at the time of § 1983's passage and since there is no public policy support today for such an immunity, none would be implied. There are compelling public policy justifications for an immunity protecting a private citizen who in good faith invokes a presumptively valid state attachment statute. These reasons alone justify an immunity. In addition, such a citizen, although not immunized per se, would not have been subject to tort liability prior to the passage of § 1983.

 The common law tort of malicious civil prosecution could be used to remedy the wrongful institution of attachment proceedings. To succeed in such an action the plaintiff must prove, inter alia, that the civil proceedings were instituted with malice and without probable cause. See 1 F. Harper & F. James, The Law of Torts § 4.8 (1956); W. Prosser, Handbook of the Law of Torts § 120 (4th Ed. 1971); see also Stewart v. Sonneborn, 98 U.S. 187, 192–97, 25 L.Ed. 116 (1879); Note, Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis, 88 Yale L.J. 1218 (1979). There was also a tort of wrongful attachment in some jurisdictions at the time of § 1983's passage. A wrongful attachment claim requires proof that the attachment was sued out wrongfully, maliciously, and without probable cause. 1 T. Cooley, A Treatise on the Law of Torts 348 (3d ed. 1906) (citing earlier cases).[8]

A pre-§ 1983 malicious prosecution or wrongful attachment defendant was entitled to a defense based upon probable cause.

8. See also Harper & James, supra, at 328 & n.16 (noting a lack of uniformity in early wrongful attachment actions; in some jurisdictions it was necessary only to show that the attachment proceedings terminated in favor of the wrongful attachment plaintiff).

9. There is a somewhat analogous concept in the federal antitrust laws. The so-called Noerr Doctrine protects antitrust defendants whose allegedly offensive action is merely to attempt to influence or induce legislative, executive, administrative, or judicial action. However, the

Of course, that defense is not the same as an immunity, but it is grounded in many of the same types of public policy justifications supporting an immunity. The most important justification is that a citizen should not be penalized for resorting to the courts to vindicate rights he in good faith has probable cause to believe are his.[9] The existence of a probable cause defense at common law convinces us that Congress in enacting § 1983 could not have intended to subject to liability those who in good faith resorted to legal process. We have merely transformed a common law defense extant at the time of § 1983's passage into an immunity.

 Our conclusion that the private defendants in this case are entitled to plead an immunity requires a remand. Immunity from personal liability in a § 1983 action is an affirmative defense. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In order to state a prima facie claim for relief under § 1983, a plaintiff need not rebut the elements of an immunity in his complaint. Id. at 639, 100 S.Ct. at 1923. Furthermore, neither the plaintiffs nor the defendants could have been aware of this immunity when the suit was filed. Thus, we remand to the district court to permit the defendants an opportunity to plead the immunity and, if pled, to permit the plaintiffs to negate the application of the immunity to the facts of this case.[10]

## IV

We reverse the district court's grant of summary judgment insofar as it was based on res judicata. However, we remand for proceedings consistent with this opinion on the issue of immunity from liability.

REVERSED AND REMANDED.

Noerr Doctrine will not exempt from liability an antitrust defendant who presses "sham" claims before such governmental bodies. See generally L. Sullivan, Handbook of the Law of Antitrust § 238, at 741–43 (1977).

10. For purposes of testing the validity of the summary judgment we have assumed the attachment statutes are unconstitutional. If it should become necessary to decide that issue, we note it is here expressly pretermitted.