IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 90-1058

———————————

HOWARD L. WYATT,

Plaintiff-Appellant,

versus

BILL COLE, JOHN ROBBINS, II,

Defendants-Appellees.

———————————

Appeal from the United States District Court for the
Southern District of Mississippi

———————————

(June 25, 1993)

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before JOHNSON, WILLIAMS, AND HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This § 1983 suit returns to this panel on remand from the
Supreme Court. In our first opinion, we affirmed the district
court's grant of qualified immunity to defendants Cole and Robbins.
Wyatt v. Cole, 928 F.2d 718 (5th Cir. 1991). The Supreme Court
reversed, holding that "qualified immunity, as enunciated in
[Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982], is [not] available
for private defendants faced with § 1983 liability for invoking a
state replevin, garnishment or attachment statute." 112 S.Ct.
1827, 1834 (1992). In so doing, the Court explained that its
decision did "not foreclose the possibility" that private
defendants "could be entitled to an affirmative defense based on

good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens."  Id.

We have requested, and received, supplemental briefs from Wyatt, Cole, and Robbins.[1]  In keeping with the Court's suggestion, as well as the more explicit guidance provided by Justice Kennedy's concurring opinion, id. at 1835-37 (Kennedy, J., concurring), and the Chief Justice's dissent, id. at 1838-39 (Rehnquist, C.J., dissenting), we now hold that plaintiffs seeking to hold private actors liable under Lugar v. Edmondson Oil Co., 102 S.Ct. 2744 (1982), must demonstrate that defendants failed to act in good faith in invoking the unconstitutional state procedures.  Because Wyatt has not shown that Cole and Robbins either knew or should have known that Mississippi's replevin statute was unconstitutional prior to its invalidation in April 1989, we affirm the district court's judgment.

I.

Howard Wyatt and Bill Cole are former business partners.  Cole sought to dissolve the partnership in July 1986.  When negotiations failed, Cole, with the assistance of his attorney, John Robbins, II, filed a state court complaint in replevin against Wyatt accompanied by a bond of $18,000.  Pursuant to Miss.Code Ann. § 11-37-101, a writ of replevin issued and the county circuit judge

---

[1]    The State of Mississippi and several county officials were also parties to this case in the district court and on appeal.  Wyatt's claims against these defendants were resolved prior to argument in the Supreme Court and are therefore not before us.

2

signed an order directing the county sheriff to execute the writ a few days later. The sheriff seized 24 head of cattle, a tractor, and other property from Wyatt on July 29 and 30, 1986. The writ of replevin and summons were served on Wyatt the next day. On October 3, 1986, after a post-seizure hearing, the circuit judge dismissed Cole's complaint in replevin and ordered him to return the property to Wyatt. Although Cole had not yet complied with this order, the judge dismissed the action without prejudice on September 3, 1988.

In July 1987, Wyatt filed this § 1983 suit in U.S. District Court for the Southern District of Mississippi, contending that the seizure of his property without notice violated the Due Process Clause as well as several state provisions. The district court declared the state replevin statute unconstitutional on April 13, 1989, 710 F.Supp. 180, but held that Cole and Robbins were entitled to qualified immunity from any damages suffered by Wyatt prior to this date under Folsom Investment Co. v. Moore, 681 F.2d 1032 (5th Cir. 1982). Wyatt conceded that he could not prove any damages resulting from defendants' conduct after the statute had been invalidated, but asserted that Cole and Robbins should be held liable for attorney's fees. The district court denied this request with respect to Cole and Robbins on grounds that a failure to recover money damages from defendants precluded a recovery of attorney's fees.

On appeal, we held that Wyatt's request for damages suffered prior to the district court's decision in 1989 was barred by Folsom, where this court held that "'a § 1983 defendant who has

3

invoked an attachment statute is entitled to an immunity from monetary liability so long as he neither knew nor reasonably should have known that the statute was unconstitutional.'"  928 F.2d 718, 721 (5th Cir. 1991) (quoting Folsom, 682 F.2d at 1037).  Given our invalidation of a similar Georgia prejudgment statute in Johnson v. American Credit Co., 581 F.2d 526 (5th Cir. 1978), we recognized that the reasonableness of Cole's and Robbins' invocation of the Mississippi statute presented a close question.  928 F.2d at 721-22.  We held, however, that Cole and Robbins, as  private actors, should not be charged with the same degree of knowledge as public officials, and that, under this more liberal standard, their reliance on the law "was not an act of unreasonable ignorance." Id. at 722.  We therefore affirmed the district court's grant of qualified immunity to Cole and Robbins.[2]

The Supreme Court then reversed, holding that qualified immunity is not "available for private defendants faced with § 1983

---

[2]     We did reverse the district court on the issue of attorneys' fees, holding that Cole, but not Robbins, was liable for fees incurred after the district court's declaratory judgment because this decision "affected the behavior of Cole towards Wyatt by effectively requiring him to return the property seized." 928 F.2d at 723.  We are no longer persuaded that this is correct.  Cole offered to return the cattle soon after the district court's invalidation of the statute, but the record discloses that his overture was not accepted.  Wyatt instead sought to recover damages for the loss of his share of the partnership's assets, which included the cattle.  At trial, however, Wyatt conceded that he could not demonstrate that Cole's seizure resulted in a net loss, and thus could not establish any damages.  Since Cole was not required to pay damages or otherwise change his behavior in any way as a result of the court's judgment, he has not been "prevailed against" and thus is not liable for attorneys' fees.  See Kentucky v. Graham, 105 S.Ct. 3099, 3104 (1985).

4

liability for invoking a state replevin, garnishment or attachment statute." 112 S.Ct. 1827, 1834 (1992). While noting that private actors enjoyed a good-faith defense against suits for malicious prosecution and abuse of process at common law, the Court asserted that such history did not, by itself, entitle them to "the qualified immunity from suit accorded governmental officials under Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982)." 112 S.Ct. at 1832 (emphasis added). To the contrary, Harlow's recognition of "such an immunity w[as] based not simply on the existence of a good-faith defense at common law, but on the special policy concerns involved in suing government officials." Id. at 1833. Because Harlow "'completely reformulated qualified immunity along principles not at all embodied in the common law,'" id. (quoting Anderson v. Creighton, 107 S.Ct. 3034, 3042 (1987)), the doctrine could be extended only if suits against private defendants implicated the same policies supporting immunity for public officials. The Court found that they did not. Qualified immunity, the Court explained, is necessary to ensure that "public officials are able to act forcefully and decisively in their jobs" and that "talented candidates [are] not deterred by the threat of damage suits from entering public service." Id. at 1833. Since these considerations are absent in the case of private parties, who of course "hold no office requiring them to exercise discretion," id., the expansion of qualified immunity contended for by Cole and Robbins was unwarranted. Thus, the Court concluded that, "[a]lthough principles of equality and fairness may suggest . . . that private

5

citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection for liability," id. at 1833, it could "offer no relief today." Id. at 1834.

The Court identified two issues for consideration on remand. Noting that this panel affirmed the district court's judgment solely on grounds of qualified immunity, the Court stated that its decision made it necessary to determine "whether Cole and Robbins, in invoking the replevin statute, acted under color of state law within the meaning of [Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)]." 112 S.Ct. at 1834. The Court also indicated that its denial of qualified immunity did not

> foreclose the possibility that private defendants faced with liability under [Lugar] could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens.

Id. We address these issues in turn.

## II.

Section 1983 provides a cause of action against any person who, under color of state law, deprives another of rights secured by the Constitution. Collins v. City of Harker Heights, 112 S.Ct. 1061, 1066 (1992); 42 U.S.C. § 1983. In Lugar v. Edmundson Oil Co., 102 S.Ct. 2744 (1982), the Supreme Court held that private parties invoking a state attachment statute may be held liable under § 1983 if their actions are "fairly attributable to the state." Id. at 2753. The Court established a two-part test for determining whether the conduct alleged meets this requirement.

6

First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Id. Second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," that is, one who is in fact a state official, one who "has acted with or has obtained significant aid from state officials," or one whose "conduct is otherwise chargeable to the State." Id. at 2754.

In applying this standard to the facts of before it, the Court in Lugar found the presence of the ex parte attachment statute sufficient to satisfy the first requirement: "[T]he procedural scheme created by the statute is obviously the product of state action [and] is subject to constitutional restraints and properly may be addressed in a § 1983 action." Id. at 2756. The Court also found the private defendants' resort to this unconstitutional procedure sufficient to meet the test's second, "joint participation" prong. Id. In so doing, the Court expressly rejected the argument "that in this context 'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures." Id. This "low threshold" for establishing state action, at least where ex parte prejudgment proceedings are involved, Davis Oil Co. v. Mills, 873 F.2d 774, 779 (5th Cir.), cert. denied, 493 U.S. 937 (1989), has been recognized by the circuit, see, e.g., Folsom, 681 F.2d at 1037 ("when a § 1983 plaintiff challenges the constitutionality of a state attachment procedure . . . the private party who sets that

7

attachment scheme in motion is to be considered a state actor"), and was confirmed by the Supreme Court in <u>Wyatt</u>. 112 S.Ct. at 1830.

The district court held that Cole's invocation of the Mississippi replevin statute was enough to trigger potential liability under § 1983. It also assumed, without expressly deciding, that Robbins, his attorney, had also acted under color of state law in requesting the writ of replevin. On remand from the Supreme Court, Cole challenges the district court's determination. Wyatt has maintained throughout this litigation that Cole's actions contravened not only federal law (in that the replevin statute operated to deprive him of his property without due process), but also state law, contending that Cole filed the complaint in bad faith, that replevin was improper under state law, and that Cole refused to return the cattle in violation of a state court order. Citing <u>Lugar</u>, Cole argues that he cannot be deemed a state actor because Wyatt's assertion that his conduct was contrary to, not consonant with, state law and policy locate the source of his harm in purely private actions for which the state cannot be held responsible.

This argument is not without merit. The Court in <u>Lugar</u> faced a similar charge that private defendants' attachment suit was "'unlawful under state law.'" <u>Lugar</u>, 102 S.Ct. at 2755. In discussing this claim, the Court made plain that "private misuse of a state statute does not describe conduct that can be attributed to the State." <u>Id.</u> at 2756. The choice to invoke the "statute

8

without the grounds to do so could in no way be attributed to a state rule or state decision"; this act is "contrary to the relevant policy articulated by the state." Id. at 2755. For this reason, complaints "alleg[ing] only misuse or abuse of the statute" do not "present a valid cause of action under § 1983." Id. at 2756. In the wake of Lugar, several courts have recognized and given effect to this principle. See, e.g., Davis Oil Co., 873 F.2d at 779-80 (discussing Lugar); Cobb v. Saturn Land Co., 966 F.2d 1334, 1335-36 (10th Cir. 1992); Hoai v. Vo, 935 F.2d 308, 313-14 (D.C.Cir. 1991), cert. denied, 112 S.Ct. 1578 (1992); Jones v. Poindexter, 903 F.2d 1006, 1010-11 (4th Cir. 1990); Collins v. Womancare, 878 F.2d 1145, 1152-54 (9th Cir. 1989), cert. denied, 493 U.S. 1056 (1990); Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984).

The district court nevertheless properly held that Cole's alleged misuse and violation of the Mississippi replevin statute did not preclude a finding that he acted under color of state law. Like the plaintiff in Lugar, 102 S.Ct. at 2755-56, Wyatt also challenged the constitutionality of the state law in asserting that his property had been taken without due process. Because this claim centers on the procedures prescribed by the statute itself, rather than defendant's alleged abuse of them, it plainly implicates the state and its authority in the deprivation of constitutional rights. Id. The Lugar Court found state action present on analogous facts; so do we.

9

With respect to Robbins, the district court held that "[w]hile an action strictly within the scope of representation of a client does not normally constitute an act under color of state law, an attorney is still a person who may conspire to act under color of state law in depriving another of secured rights." Tower v. Glover, 467 U.S. 914, 920-23 (1984); Russell v. Milsap, 781 F.2d 381, 383 (5th Cir. 1985), cert. denied, 479 U.S. 826 (1986). See Hoai, 935 F.2d at 313 n.5. Cf. Watertown Equipment Co. v. Norwest Bank Watertown, N.A., 830 F.2d 1487, 1496 (8th Cir. 1987), cert. denied, 108 S.Ct. 1723 (1988). Wyatt has not asserted that Robbins performed any acts lying outside the scope of his representation of Cole. The district court, however, assumed that Robbins acted under color of state law and Robbins himself concedes this point in his brief. We will therefore assume, without deciding, that Robbins as well as Cole may be held liable under § 1983 for Wyatt's constitutional injury.

### III.

Bound by our prior decision in Folsom Investment Co. v. Moore, 681 F.2d 1032 (5th Cir. 1982), this panel affirmed the district court's grant of qualified immunity to Cole and Robbins. See 928 F.2d at 721-22. The Supreme Court reversed, but, as we noted above, see supra, at p.5-6, indicated that "principles of equality and fairness" may suggest that private defendants "should have some protection for liability," id. at 1833, and expressly declined to foreclose the possibility that a showing of good faith would defeat a § 1983 action brought against individuals such as Cole and

10

Robbins.  Id. at 1834.  The five Justices who either concurred or dissented were more forthright in their support of a standard that would relieve private parties who reasonably relied on a state statute of liability.  See id. at 1835-37 (Kennedy, J., joined Scalia, J., concurring); id. at 1838-39 (Rehnquist, C.J., joined by Souter & Thomas, JJ., dissenting).  When read together, we believe that the question left open by the majority was largely answered by these separate opinions.  We accordingly hold that private defendants sued on the basis of Lugar may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional.  We also find that Wyatt has failed to meet this standard and therefore affirm the district court's judgment.

As the Court stressed in Wyatt, it has consistently recognized that Congress, in enacting the Civil Rights Act of 1871, legislated against a background of common-law tort liability.  112 S.Ct. at 1831; id. at 1835 (Kennedy, J., concurring).  See, e.g., Owen v. City of Independence, 445 U.S. 622, 637-38 (1980); Pierson v. Ray, 386 U.S. 547, 556-57 (1967); Monroe v. Pape, 365 U.S. 167, 187 (1961).  Thus, while § 1983 "creates a species of tort liability that on its face admits of no immunities," Imbler v. Pachtman, 424 U.S. 409, 417 (1976), the Court has read the provision "'in harmony with general principles of tort immunities and defenses rather than in derogation of them.'"  Malley v.

11

Briggs, 106 S.Ct. 1092, 1095 (1986) (quoting Imbler, 424 U.S. at 418)).  At the same time, because the process of drawing positive inferences from legislative silence is always accompanied by a certain amount of uncertainty, the Court has only "look[ed] to the common law for guidance," and has not "assume[d] that Congress intended to incorporate every common-law immunity into § 1983 in unaltered form."  Malley, 106 S.Ct. at 1095.  The conclusion that Congress intended to incorporate a specific defense should follow only after determining that "a tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'"  Owen, 445 U.S. at 637 (quoting Pierson, 386 U.S. at 555)).

The Court in Wyatt identified malicious prosecution and abuse of process as the common-law causes of action most analogous to Wyatt's claim under Lugar and therefore focused its inquiry on the elements of these torts.  While differing as to the legal consequences of their common finding, all of the Justices agreed that plaintiffs seeking to recover on these theories were required to prove that defendants acted with malice and without probable cause.  See 112 S.Ct. at 1832 n.2 ("a plaintiff's malicious prosecution or abuse of process action failed if she could not affirmatively establish both malice and want of probable cause"); id. at 1835 (Kennedy, J., concurring) ("In both of the common law actions, it was essential for the plaintiff to prove that the wrong doer acted with malice and without probable cause"); id. at 1838

12

n.1 (Rehnquist, C.J., dissenting) ("it was plaintiff's burden to establish as elements of the tort both that the defendant acted with malice <u>and</u> without probable cause" (emphasis added). <u>See generally</u> <u>Stewart v. Sonneborn</u>, 98 U.S. 187, 194 (1878); 2 C. Addison, Law of Torts § 1, p. 65 (1876); J. Bishop, Commentaries on Non-Contract Law § 242, at 97 (1889); T. Cooley, Law of Torts 184 (1879); 1 F. Harper & F. James, The Law of Torts 311 (1956); Note, <u>Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis</u>, 88 Yale L.J. 1218, 1219 (1979).

The majority in <u>Wyatt</u> concentrated on the immediate issue at hand--whether the purposes and policies underlying § 1983 would be served by transforming essential elements of the plaintiff's case at common law into a defense of qualified immunity to be asserted by defendants. The Court held that they would not. 112 S.Ct. at 1833-34. Justice Kennedy and, at least to some extent, Chief Justice Rehnquist accepted the majority's holding, but then moved on to consider the precise contours of the good faith doctrine they, along with the three other Justices who joined their opinions, believed would be available to Cole and Robbins on remand.

They agreed that plaintiffs, not defendants, bore the burden of proof on the questions of malice and probable cause, 112 S.Ct. at 1837 (Kennedy, J., concurring), and that, since plaintiffs were required to prove both at common law, a defendant could avoid liability under § 1983 by showing the absence of either. 112 S.Ct. at 1838-39 (Rehnquist, C.J., dissenting). Justice Kennedy and

13

Chief Justice Rehnquist also agreed that the probable cause inquiry could not be wholly equated with qualified immunity, since the Court had previously identified the Harlow Court's "replac[ement] of the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action" as a "complete[] reformulat[ion] [of] qualified immunity along principles not at all embodied at common law." Anderson v. Creighton, 107 S.Ct. 3034, 3042 (1987) (citing Harlow, 102 S.Ct. at 2736-39). See 112 S.Ct. at 1839 n.2 (Rehnquist, C.J., dissenting) ("There is perhaps one small difference between the historical common law inquiry and the modern qualified immunity inquiry. At common law, a plaintiff can show the lack of probable cause either by showing that the actual facts did not amount to probable cause (an objective inquiry) or by showing that the defendant lacked a sincere belief that probable cause existed (a subjective inquiry)").

Justice Kennedy emphasized the importance of the subjective inquiry into malice, stating that, "[u]nder common law . . . if the plaintiff could prove subjective bad faith on the part of the defendant, he had gone far towards proving both malice and lack of probable cause." 112 S.Ct. at 1836 (Kennedy, J., concurring). The justification he offered to support the prominence of this inquiry, however, cut both ways. On the one hand, he indicated that the examination of private defendants' actual knowledge of the validity of the law might lead to a finding of liability in circumstances where public officials would be shielded by qualified immunity.

14

112 S.Ct. at 1836-37 (Kennedy, J., concurring) ("It seems problematic to say that a defendant should be relieved of liability under some automatic rule of immunity if objective reliance upon a statute is reasonable but the defendant in fact had knowledge of its invalidity").  On the other hand, given this emphasis on what private actors actually know, rather than what they should know, private defendants might establish probable cause and avoid liability even though a right was "clearly established." Anderson, 107 S.Ct. at 3038. See 112 S.Ct. at 1837 (Kennedy, J., concurring) ("the existence of a statute thought valid ought to allow a defendant to argue that he acted in subjective good faith and is entitled to exoneration no matter what the objective test is").

A private defendant's good faith is especially significant because Harlow's qualified immunity standard is far more demanding than the objective component of the common law probable cause inquiry, since private actors are not charged with the same amount of knowledge regarding the law as public officials.  As Justice Kennedy noted, "there is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law."  Id. at 1837 (citing Birdsall v. Smith, 122 N.W. 626, 627 (Mich. 1909)).  In addition, "'[t]he layman's ignorance of the law has been taken into account in the almost universal holding that probable cause is established where the prosecution was instituted with the advice of counsel.'" Duncan v. Peck, 844 F.2d 1261, 1267 (6th Cir. 1988) (quoting

15

Prosser & Keeton, The Law of Torts § 119 (5th ed. 1984)). See also Bishop, § 236, at 93-94; Cooley, at 183-84; 1 Harper & James, at 313-14, 322. Aside from these bright-line rules, the Court recently provided additional guidance on the contours of the probable cause inquiry in Real Estate Investors v. Columbia Pictures, 113 S.Ct. 1920 (1993), where it revisited this issue in the context of antitrust sham litigation. There, the Court held that "[p]robable cause to institute civil proceedings requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'" Id. at 1929 (quoting Hubbard v. Beatty & Hyde, Inc., 178 N.E.2d 485, 488 (Mass. 1961) (alterations in original)); Restatement (Second) of Torts § 675, Comment e, pp. 459-60 (1977) ("In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe there is a sound chance that his claim may be held legally valid upon adjudication").

In light of these considerations, we think that private defendants, at least those invoking ex parte prejudgment statutes, should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity. The record in this case discloses that the Mississippi replevin statute invoked by Cole, while perhaps placed in "legal jeopardy" by our decision in Johnson v. American Credit Co., 581 F.2d 526 (5th Cir. 1978), see 928 F.2d at 721, remained good law at the time of his suit. Moreover, there is evidence that Cole relied on Robbins' advice in filing his

16

complaint in replevin. We need not, however, rely on the categorical common-law rules cited above to find that probable cause supported Cole's resort to the state procedures, for, as we stated in our prior opinion, "[w]e need not conclude that a private actor is entitled to rely on any statutory relic, regardless of its current absurdity," in order to hold "that reliance upon the statute by the private actors was not an act of unreasonable ignorance." 928 F.2d at 721-22.[3]

Having concluded that Cole's and Robbins' invocation of the Mississippi statute was not objectively unreasonable, we turn to consider whether they in fact believed the statute to be constitutionally valid at the time of the suit. Wyatt contends that Cole's professed good faith reliance on the replevin procedures is undermined by the existence of several facts tending to show that Cole filed the complaint out of malice. Wyatt alleges that Cole threatened to use "political influence" to secure the return of his cattle, had no grounds under state law for bringing his action in replevin, and refused to restore the property seized in violation of a state court order.

We will assume for purposes of decision that Wyatt's account of these events is true. We do not see, however, how these allegations detailing Cole's misuse and abuse of state procedures

---

[3]     Wyatt argues that Robbins, as an attorney, should be held charged with a greater knowledge than other private defendants. We disagree. As we indicated in our first opinion, Robbins "is subject to the same standard of good faith as Cole because the relevant distinction is between persons acting privately and those acting for the state. " 928 F.2d at 722 n.5.

17

bear on whether he in fact believed the Mississippi statute to be constitutionally infirm. It is this narrow question, not whether Cole exhibited a generalized "malice" by filing suit for improper reasons, that is relevant in determining whether probable cause lies. As we noted above, see supra, p. 8-9, state law claims are not cognizable under § 1983. Wyatt seeks to hold Cole liable for damages for invoking the statute that led to the deprivation of his property without due process. Unless we may infer defendant's knowledge of federal law from his alleged violations of state law, the latter have no bearing on the probable cause inquiry. In the absence of any evidence that either Cole or Robbins had actual knowledge of the replevin statute's constitutional infirmity, we hold that the district court properly barred Wyatt's damage claims against them.

IV.

For the foregoing reasons, we affirm the district court's judgment.